SUTHERLAND et al., Appellees,

v.

ITT RESIDENTIAL CAPITAL CORPORATION et al.,
Appellees; GURGENIAN et al., Appellants.

[Cite as *Sutherland v. ITT Residential Capital Corp.* (1997), 122 Ohio App.3d 526.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–96–042.

Decided Aug. 22, 1997.

528

*Stephen B. Mosier, Martin D. Carrigan, Lance M. Keiffer* and *Alan R. McKean,* for appellees Sutherlands.

*Michael A. Nims, Stephan I. Voudris* and *Douglas O. Meyer,* for appellees ITT Residential Capital Corporation and ITT Residential Capital Servicing Corporation.

*Alice McInerney, Roger W. Kirby, James P. Carroll, Jr.,* and *Jeffrey F. Keller,* for appellants.

---

*Per Curiam.*

This is an appeal from a judgment of the Ottawa County Court of Common Pleas approving the settlement of a class action and dismissing the cause with prejudice. Objectors-appellants, Hrayr Gurgenian, Thomas McEvoy, and William Hayden, raise the following assignments of error on appeal:

"*Assignment of Error No. 1:* The trial court incorrectly applied the law and also abused its discretion in certifying the action as a class action and the manner in which it conducted the settlement hearing.

"*Assignment of Error No. 2:* The trial court incorrectly applied the law and also abused its discretion in approving the settlement below.

"*Assignment of Error No. 3:* The trial court incorrectly applied the law and also abused its discretion in refusing to hear a class member's objection.

"*Assignment of Error No. 4:* The trial court erroneously excluded McEvoy and Gurgenian as class members.

"*Assignment of Error No. 5:* The trial court erroneously considered evidence offered by the proponents of the settlement and/or erroneously excluded evidence offered by objectors.

"*Assignment of Error No. 6:* The trial court erroneously granted the plaintiffs' motion to strike in violation of the Ohio Rules of Civil Procedure Rules 6(D) and 6(E)."

The procedural history of this case is tedious, but an explanation of it is necessary to our discussion of this matter. On March 27, 1995, plaintiffs-appellees, Cecil O. and Rita E. Sutherland, on behalf of themselves and all others similarly situated, filed a class action complaint in the Ottawa County Court of Common Pleas against defendant-appellee, ITT Residential Capital Corporation ("ITT"). The complaint alleged that the Sutherlands purchased their home, located at 6705 W. Little Portage Road, Oak Harbor, Ohio ("the premises"), on November 1, 1983 and that, in purchasing that home, the Sutherlands obtained financing in the amount of $36,000 from United Home Federal Savings & Loan Association pursuant to a loan agreement and note ("loan agreement"). The complaint further alleged that the purchase was secured by a mortgage, which was recorded on November 2, 1983 in the Ottawa County Record of Mortgages; that the mortgage and loan agreement were assigned to First Heights Bank on September 10, 1992, which subsequently assigned the mortgage and loan agreement to ITT; that on January 12, 1994, the Sutherlands refinanced the purchase price of the premises by repaying in full all amounts due and owing under the loan agreement and mortgage and by obtaining a new mortgage loan through AG Credit of Genoa, Ohio; that also on January 12, 1994, the Sutherlands submitted to ITT the entire payoff amount due and owing on the loan agreement and mortgage; and that subsequently ITT executed and cashed the payoff check. The Sutherlands then alleged that despite their payoff of the total amount due and owing ITT, ITT has not filed of record any release of the mortgage or a satisfaction of the mortgage with the Ottawa County Recorder's Office despite numerous demands made by the Sutherlands. The complaint then set forth class action allegations that essentially identified the class as all persons or entities similarly situated. As to this class, the complaint alleged that ITT had engaged in a common course of conduct and that all members of the plaintiff class had been wronged identically in that ITT had failed to timely file of record a release or satisfaction of the mortgages after being fully paid. The complaint then alleged that ITT had breached its contracts with the Sutherlands and class members and that ITT had violated its statutory duties to the Sutherlands under R.C. 5301.36 and to the other class members under like statutes. Finally, the complaint demanded a declaratory judgment that ITT had breached its contractual and statutory duties to the plaintiffs and class members, an injunction

commanding ITT to file of record with the appropriate offices releases or satisfactions of mortgages, damages for breach of ITT's contractual obligations, statutory damages of $250 for each Ohio class member, statutory damages for non-Ohio class members as provided in the statutes of the applicable state, attorney fees, and costs. In connection with the complaint, plaintiffs filed a motion for class certification, which requested that the class be certified as defined in the complaint, and a brief in support.

On April 13, 1995, the Sutherlands filed their first amended class action complaint. That complaint added as defendants First Heights Bank, ITT Residential Capital Servicing Corp., XYZ Corp. (defined as "any predecessor, successor, assignee, parent corporation, subsidiary corporation, affiliate corporation or other entity, however associated with ITT Residential Capital Corp. or ITT Residential Capital Servicing Corp., which at any time owned, held or serviced the mortgage or mortgage loan on [the premises]"), and ABC Corp. (defined as "any predecessor, successor, assignee, parent corporation, subsidiary corporation, affiliate corporation or other entity, however associated with First Heights Bank, which at any time owned, held or serviced the mortgage or mortgage loan on [the premises]"). In addition, the first amended complaint added a claim for slander of title, which alleged that by failing to timely file or record a release or satisfaction of mortgage for the Sutherlands and the other class members, defendants have created clouds upon the titles of the Sutherlands and other class members. Consistent with the first amended complaint, the Sutherlands filed an amended motion for class certification.

Subsequently, after being granted leave to do so, the Sutherlands filed a second amended class action complaint and a second amended motion for class certification. The second amended class action complaint maintained the breach of statutory duties claim as a class claim but specified that the claims for breach of contract and slander of title were being brought solely by the Sutherlands and not on behalf of the class members. In their second amended motion for class certification, the plaintiffs proposed two alternative class definitions for the court's consideration. The alternative classes were composed of persons or entities who met the definitions and who owned property in one or more of the following locations: Arkansas, California, Florida, Idaho, Illinois, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Montana, New Jersey, North Dakota, New York, Ohio, Puerto Rico, South Dakota, Virginia, Washington, and Wisconsin.

On January 5, 1996, the Sutherland plaintiffs and the ITT defendants (collectively referred to as "the settling parties") filed a "joint motion for preliminary approval of settlement agreement, conditional certification of settlement class, and approval of notice to the class" pursuant to Civ.R. 23(E). In that motion, the settling parties represented that they had reached a settlement and requested

that the court enter an order that "(1) preliminarily approves the written Settlement Agreement of the parties * * *; (2) certifies a class for settlement purposes only, as provided in the Settlement Agreement; (3) approves notice to the class in the manner provided in the Settlement Agreement; (4) prescribes a period of time within which class members may submit requests to be excluded from the class or objections to the settlement of the action; and (5) sets a date for a hearing on final approval of the proposed settlement."

Upon review, the trial court, on January 10, 1996, entered an order concerning class certification, notice, and scheduling. Specifically, the court preliminarily approved the settlement agreement and ordered the case to proceed as a class action, for settlement purposes only, on behalf of the two classes expressly defined in the settlement agreement:

"a. Class One is defined as all persons or entities (1) who currently are, or who were in the past, a mortgagor on any real property located in Arkansas, California, Florida, Idaho, Illinois, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Montana, New Jersey, New York, North Dakota, Ohio, Puerto Rico, South Dakota, Virginia, Washington or Wisconsin, which mortgaged real property secured [by] a loan owned, held or serviced by ITT Residential Capital Servicing Corporation, or its predecessors, at the time the indebtedness secured by said mortgage was fully paid, (2) who fully paid, on or after April 15, 1992, the amounts due pursuant to the mortgage, but for whom, according to the books and records of ITT Residential Capital Servicing Corporation, no release or satisfaction of record was filed or sent for filing within the time provided by the applicable release statute in their jurisdiction or for whom ITT Residential Capital Servicing Corporation cannot determine from its own records whether the release or satisfaction of record was timely filed or sent for filing, and (3) who fully paid the amounts due pursuant to the mortgage on or before January 26, 1993 if their mortgaged real property in question was located in Arkansas or Washington, on or before February 10, 1993 if their mortgaged real property in question was located in Minnesota, on or before February 25, 1993 if their mortgaged real property in question was located in Illinois, Iowa, Montana or Wisconsin, on or before February 4, 1993 if their mortgaged real property in question was located in New Jersey, on or before March 26, 1993 if their mortgaged real property in question was located in Idaho, on or before December 27, 1993 if their mortgaged real property in question was located in Ohio or Virginia, on or before January 26, 1994 if their mortgaged real property in question was located in California or Louisiana, on or before February 25, 1994 if their mortgaged real property in question was located in Mississippi, on or before March 7, 1994 if their mortgaged real property in question was located in Kansas,

or on or before March 17, 1994 if their mortgaged real property in question was located in Puerto Rico.

"Class Two is defined as all persons or entities (1) who currently are, or who were in the past, a mortgagor on any real property located in Arkansas, California, Florida, Idaho, Illinois, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Montana, New Jersey, New York, North Dakota, Ohio, Puerto Rico, South Dakota, Virginia, Washington or Wisconsin, which mortgaged real property secured [by] a loan owned, held or serviced by ITT Residential Capital Servicing Corporation, or its predecessors, at the time the indebtedness secured by said mortgage was fully paid, (2) who fully paid, on or after April 15, 1992, the amounts due pursuant to the mortgage, but for whom, according to the books and records of ITT Residential Capital Servicing Corporation, no release or satisfaction of record was filed or sent for filing within the time provided by the applicable release statute in their jurisdiction or for whom ITT Residential Capital Servicing Corporation cannot determine from its own records whether the release of satisfaction of record was timely filed or sent for filing, and (3) who fully paid the amounts due pursuant to the mortgage on or after April 15, 1992 if their mortgaged real property in question was located in Florida, New York, North Dakota or South Dakota, after January 26, 1993 if their mortgaged real property in question was located in Arkansas or Washington, after February 10, 1993 if their mortgaged real property in question was located in Minnesota, after February 25, 1993 if their mortgaged real property in question was located in Illinois, Iowa, Montana, or Wisconsin, after February 4, 1993 if their mortgaged real property in question was located in New Jersey, after March 26, 1993 if their mortgaged real property in question was located in Idaho, after December 27, 1993 if their mortgaged real property in question was located in Ohio or Virginia, after January 26, 1994 if their mortgaged real property in question was located in California or Louisiana, after February 25, 1994 if their mortgaged real property in question was located in Mississippi, after March 7, 1994 if their mortgaged real property in question was located in Kansas, or after March 17, 1994 if their mortgaged real property in question was located in Puerto Rico."

Accordingly, Class One was composed of those class members whose claims against ITT would otherwise be time-barred by the applicable statute of limitations in their respective states and Class Two was composed of those class members whose claims against ITT would not be so time-barred. Pursuant to the settlement agreement, members of Class One would receive a cash distribution of $15 each while members of Class Two would receive a cash distribution determined by the jurisdiction in which the mortgaged property was located. For instance, class members whose mortgaged property was located in Ohio were to receive $75, those whose mortgaged property was located in California were to

receive $90, and those whose mortgaged property was located in New York were to receive $100. The trial court also approved the form and content of the notice of the settlement agreement, which was to be mailed to the class members, and the summary notice of proposed settlement which was to be published. The court ordered that the notice be mailed to class members on or before March 20, 1996 and that the summary notice be published twice on or before April 1, 1996. The court further ordered that a final hearing was to be held on June 6, 1996 to determine whether the proposed settlement of the case, on the terms and conditions set forth in the settlement agreement, was fair, reasonable and adequate to the class members. The court then ordered as follows:

"8. Class members shall be bound by all determinations and judgments in this case relating to the proposed settlement, whether favorable or unfavorable, unless such persons shall submit a written request for exclusion ('Request for Exclusion') from the class, to be postmarked no later than May 7, 1996, addressed to Fuller & Henry, One SeaGate, 17th Floor, P.O. Box 2088, Toledo, Ohio 43603, Attention: Sutherland Class Action. The Request for Exclusion shall identify the name and current address of the person seeking exclusion, the location of the mortgaged property (if known), the date of any mortgage payoff (if known), and clearly indicate that the sender requests to be excluded from the Class. A member of the Class who duly requests to be excluded in accordance with the provisions hereof shall be excluded from the Class, will not be bound by any orders or judgments entered in this case relating to this settlement and shall not receive any benefits provided for in the Settlement Agreement in the event it is approved by the Court.

"9. All members of the Class who do not request exclusion therefrom in the manner provided in Paragraph 8 of this Order may enter an appearance in this case, personally or through counsel of their own choice and at their own expense. If they do not enter an appearance, they will be represented by Class Counsel.

"10. Any member of the Class who has not requested exclusion therefrom in the manner provided in Paragraph 8 of this Order may appear and show cause, if he or she has any, why the proposed settlement of this case should or should not be approved as fair, reasonable and adequate, or why a judgment should or should not be entered thereon or why the requested fees should or should not be awarded to Class Counsel; provided, however, that no Class member or any other person shall be heard or entitled to contest the approval of the terms and conditions of the proposed settlement, or, if approved, the judgment to be entered thereon approving the same, or the amount of attorneys' fees to be awarded to Class Counsel, unless that person has filed the original and one copy of a written statement containing his or her name and address, the reasons for objections, an indication that he or she wishes to appear and be heard at the hearing, and, if

known, the date of payoff of any loan for the mortgage(s) serviced by Settling Defendants and an identification of the class of which he or she is a member, and, if desired, a memorandum of supporting authorities, and any other papers to be submitted, with the Clerk of Courts, Court of Common Pleas of Ottawa County, Ohio, 315 Madison Avenue, Port Clinton, Ohio 43452, on or before May 7, 1996. In addition, copies of these papers simultaneously shall be served upon Fuller & Henry * * * Attention: Stephen B. Mosier, Esq. or Martin D. Carrigan, Esq., and upon Jones Day Reavis & Pogue, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, Attention: Stephan I. Voudris, Esq. Any member of the Class who does not make the objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed settlements as incorporated in the Settlement Agreement and to the award of attorneys' fees to Class Counsel."

Subsequently, notice of the proposed settlement consistent with the order of January 10, 1996, was published in USA Today and mailed to the 51,086 persons or entities who were identified as class members through a search of ITT's books and records in accordance with the proposed settlement agreement. In response to the notice, the court received a letter from objector-appellant, William P. Hayden, and his wife, in which the Haydens stated that they wished to remain members of the class. The Haydens, however, had two specific objections to the settlement: that approval of the settlement should be contingent upon the original release/conveyance documents of the class members being recorded and returned in a timely fashion and that the proposed monetary settlement for Class Two be increased to $1,000. Other class members, however, elected to opt out of the class. In all, seventy-three of the 51,086 class members elected to opt out. In addition, on May 10, 1996, objectors-appellants, Hrayr Gurgenian and Thomas McEvoy, filed a notice of objection to the settlement and intention to appear and a memorandum in support thereof in which they asserted that they were class members in both the present case and in a putative class action pending in California, *Babcock v. ITT Corp.*, San Diego Superior Court case No. 697642, which was filed on August 31, 1995. Gurgenian and McEvoy also filed motions to have counsel, Alice McInerney and Jeffrey F. Keller, admitted *pro hac vice*, in order to represent Gurgenian and his "putative class" in the present case. In response, plaintiffs filed a motion to strike the objections of Gurgenian and McEvoy on the ground that they were not class members and thus did not have standing to object to the proposed settlement. Similarly, ITT filed a memorandum in support of final approval of the settlement agreement, which also asserted that Gurgenian and McEvoy were not class members. Attached to that memorandum is the affidavit of William Bixby, the vice president for Computer & Equipment Leasing Corporation ("CELCO"), the successor by merger of ITT.

Bixby attested that his duties included the administration of the class notice and that, according to ITT's records, Gurgenian and McEvoy were not class members. Specifically, Bixby asserted that Gurgenian was not a class member because he did not pay off his loan to ITT and servicing of his loan was transferred to Railroad Savings Bank on August 3, 1992. Bixby further attested to the fact that McEvoy was not a member of the class. Bixby stated that, according to ITT's records, McEvoy's loan was paid off on May 10, 1993 and a release was sent for recording on May 27, 1993.

On June 6, 1996, the case proceeded to the hearing contemplated in the January 10, 1996 order. On that same day, plaintiffs-appellees filed a class list and list of opt-outs under protective seal. At the hearing, attorney McInerney appeared on behalf of objectors Gurgenian and McEvoy. In addition, for the first time in the proceedings, McInerney indicated that she was appearing on behalf of objector Hayden. Initially, the court addressed the issue of whether Gurgenian and McEvoy were class members and therefore had standing to object. The plaintiffs and defendants agreed that the class was defined by the settlement agreement, which specified that the class was based on a search of the books and records of ITT. The plaintiffs and defendants also agreed that neither Gurgenian's nor McEvoy's name appeared on the class list submitted to the court under seal and attested to by Bixby. After hearing the arguments of counsel, the trial court ruled that objectors Gurgenian and McEvoy had not established that they were members of the class. The court then heard arguments on the issue of whether Hayden was a member of the class and whether he was properly appearing before the court. While all parties agreed that Hayden was a member of the class and that he had sent written notice to the court of his objections to the settlement, plaintiff's counsel represented that he had been informed by counsel for ITT that ITT had never been served with a copy of those objections as required by the order of January 10, 1996. Plaintiff's counsel further argued that Hayden had not notified anyone of his intention to appear at the hearing, either personally or through counsel, as was required by the notice of settlement agreement. Upon consideration, the court ruled that because Hayden had failed to enter an appearance, either personally or through counsel, on or before May 7, 1996, he would not be allowed to participate in the final hearing. In an order dated June 12, 1996, which documented the court's rulings at the hearing, the court further found that Hayden had not properly served his objections on ITT and was therefore foreclosed from objecting to the settlement agreement. Finally, that order dismissed the objections of Gurgenian, McEvoy, and Hayden on the ground of lack of standing.

On June 20, 1996, the trial court filed its final approval order approving the parties' settlement agreement. From that order, objectors-appellants filed a

notice of appeal challenging the final order as well as previous orders of the court.

In response to appellants' assignments of error, appellees, the plaintiffs and defendants in the action below, have asserted that appellants did not have standing to challenge the settlement agreement below and, accordingly, do not have standing to bring this appeal. In addressing the merits of appellees' arguments and appellants' third and fourth assignments of error, we must divide our discussion into two parts: the standing of Gurgenian and McEvoy, and the standing of Hayden.

We begin our discussion with the well-settled principle that "[a]greements of compromise and settlement are highly favored at law." *Rice v. Hope* (Jan. 7, 1991), Montgomery App. No. 12048, unreported, 1991 WL 1667, citing *State ex rel. Wright v. Weyandt* (1977), 50 Ohio St.2d 194, 4 O.O.3d 383, 363 N.E.2d 1387. This principle is equally true in complex class action litigation. In this light, Civ.R. 23(E) provides:

"A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

Accordingly, only members of the class are entitled to notice of a proposed settlement. The Fourth Circuit Court of Appeals [1] in *Gould v. Alleco, Inc.* (C.A.4, 1989), 883 F.2d 281, 284, certiorari denied (1990), 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953, interpreting Fed.R.Civ.P. 23(e), which is identical to the Ohio rule, specifically held that nonclass members had no standing to object to a proposed class settlement. The court reasoned:

"Beginning from the unassailable premise that settlements are to be encouraged, it follows that to routinely allow non-class members to inject their concerns via objection at the settlement stage would tend to frustrate this goal."

In the present case, it is undisputed that Gurgenian and McEvoy are not members of the class. They claim, however, that they have standing because they were ITT customers at the time of their loan payoffs and they sustained the same harm as the named plaintiffs. Whether these assertions are true is irrelevant. The class in this case consists of those persons or entities who meet the definition of the class as set forth in the settlement agreement. The plaintiffs and defendants below, through a search of ITT's books and records, identified

---

**1.** Because Civ.R. 23 is identical to Fed.R.Civ.P. 23, with the exception of Civ.R. 23(F), which is not relevant to the present case, "federal authority is an appropriate aid to interpretation of the Ohio rule." *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 201, 31 OBR 398, 509 N.E.2d 1249, 1251–1252.

51,086 persons or entities who met the definition of the class. Gurgenian and McEvoy are not among that group. The fact that Gurgenian and McEvoy are not among the class leaves any claims that they may have against ITT intact.

"The fact that res judicata would bind them provides class members with an incentive to voice their objections. Those who are not class members, because they are outside the definition of the class or have opted out, are on a different footing. Class action settlements typically leave intact the legal claims of others. This is one of the reasons why nonsettling parties in multi-party cases lack standing to object to settlement agreements." *Mayfield v. Barr* (C.A.D.C.1993), 985 F.2d 1090, 1092.

Accordingly, the trial court properly ruled that appellants Gurgenian and McEvoy did not have standing to object to the proposed settlement. Moreover, because any claims that these appellants may have against ITT have not been extinguished by the settlement, these appellants have not been prejudiced by the court's ruling.

▪ It is noteworthy that appellants Gurgenian and McEvoy were not without recourse in the proceedings below. It is well established that a nonparty to an action who "claims an interest relating to the property or transaction which is the subject of the action and [who] is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest" may file a motion to intervene pursuant to Civ.R. 24(A). In class action litigation, "[i]nterjection of the opposing views of non-class members should proceed via intervention under Rule 24." *Gould, supra,* 883 F.2d at 284. The denial of a motion to intervene as of right is then a final appealable order. *Blackburn v. Hamoudi* (1986), 29 Ohio App.3d 350, 352, 29 OBR 479, 480–481, 505 N.E.2d 1010, 1012–1013.

▪ We will now address the standing issue as it relates to appellant Hayden. It is undisputed that Hayden was a member of the class; received notice of the proposed settlement; and notified the court that, while he wished to remain a member of the class, he had two objections to the proposed settlement. Appellees contend, however, that Hayden does not have standing to bring the present appeal because he was not a named class representative and he did not intervene in the proceedings below. We agree.

▪ It is well settled that "only parties to a lawsuit, or those that properly become parties," have standing to appeal an adverse judgment. *Marino v. Ortiz* (1988), 484 U.S. 301, 304, 108 S.Ct. 586, 587, 98 L.Ed.2d 629, 633. In a class action, unnamed members of the class bear some resemblance to nonparties in other cases yet they are also bound by the final judgment. *Shults v. Champion Internatl. Corp.* (C.A.6, 1994), 35 F.3d 1056, 1058. Accordingly, they hold a

unique position in litigation. In *Shults*, the Sixth Circuit Court of Appeals addressed the issue of the standing of a non-named class member to appeal a settlement in a class action. The court evaluated its own prior case law in light of the Supreme Court's holding in *Marino*, and concluded:

"In brief, a non-named class member has standing to appeal a settlement order if he has formally intervened in the action (indeed, non-parties generally obtain such standing upon intervention). However, a non-named party that has not been permitted to intervene may also have standing to bring a direct appeal if a motion to intervene, which is then appealed, should have been granted. A non-named party may also have standing to appeal if the district court has otherwise 'summoned' him into court. Of course, as the Supreme Court has indicated, 'the better practice is * * * to seek intervention for purposes of appeal.' *Marino*, 484 U.S. at 304, 108 S.Ct. at 587–588, 98 L.Ed.2d at 633 * * *. *But a mere voluntary appearance to state or file objections is an insufficient basis for standing to appeal.*" (Emphasis added.) *Shults*, 35 F.3d at 1061.

In the present case, Hayden merely filed written objections to the proposed settlement. He did not seek to intervene. He further failed to properly make an appearance before the court. His attempted appearance through attorney McInerney at the June 6, 1996 hearing was not made in conformance with the notice of proposed settlement because Hayden had never previously notified the parties or the court of his intention to appear. Therefore, because Hayden's only "appearance" in the proceedings below was a written notice to the court of his objections to the proposed settlement, Hayden did not have standing to appeal the trial court's judgment.

Accordingly, because the trial court properly found that Gurgenian and McEvoy did not have standing to object to the proposed settlement, and because Hayden did not have standing to appeal the trial court's judgment, the third and fourth assignments of error are not well taken. We need not address the remaining assignments of error raised in appellants' brief.

On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants.

*Judgment affirmed.*

MELVIN L. RESNICK, P.J., GLASSER and KNEPPER, JJ., concur.